We proceed to the last matter on calendar for argument, and that's Jane Doe v. Ventura United School District, and I think we have some of the same parties, and it's ten minutes each side. May I have a brief moment to... Sure, yes. I'm not that mean. You can go to council table and change your file. My kids might not agree that I'm not that mean, but I'm really not. Okay, if you're ready, we're ready for you. May it please the court, Cameron Atkinson on behalf of Jane Doe. The district court erred in denying her pseudonymity in this case. This is a case where she faced criminal charges for asserting her religious beliefs and holding firm on those religious beliefs. Courts across the country have additionally found that beliefs such as the one as Jane Doe espouses in this case have drawn severe or have threatened severe harm to Jane Doe, to people like Jane Doe, and have granted immunity in that. With respect to this court's factors in the advanced textile case, the district court erred in assessing the severity of the harm here. So is the standard of review abuse a discretion? Yes, Your Honor. Okay. So what's your strongest argument that the district court abused its discretion when it denied Doe leave to proceed anonymously? I'm not sure if I'm going to say this case name right, but the Kamahama case reversed or stated it was error for a district court to simply rely on the normal presumption that parties use their real names in litigation. An actual analysis is needed. And I believe advanced... Well, but doesn't it... But when you're claiming that you're going to be, you know, that bad things are going to happen to you and the district court... I think what the district court said is there are many other cases in which plaintiffs using their names challenge the constitutionality of California's vaccination laws and nothing happened to them. So how's her situation different? I take the point. I think what distinguishes Jane Doe's case at this point is she faced a criminal prosecution. Yes, that criminal prosecution was dropped, but she's already enduring the harm. Well, the criminal prosecution isn't Judge Barat's fault, right? No, it's not. Okay. And so that would be public anyway, right? No, it was never docketed. So the police officer did issue Jane Doe a criminal citation. It went to the Ventura County prosecutor's office and somewhere along the way a decision was made not to fully go through it. But there was an action by a police officer to criminally cite Jane Doe. There was an action directed at the direction of a prosecutor who was at this meeting. Can I ask, is the interest that you don't want that criminal citation to become public or is the fear that she could be prosecuted again? Well, neither. Neither? I say that at this point because I accept counsel for the Ventura District Attorney's Office's representations that they are not going to prosecute her again and I represent that as an officer of the court today. So then how does that criminal prosecution play into the anonymity request? These folks are representatives of the community and if they had the reaction to Jane Doe asserting her religious beliefs, stating, staying firm in her religious beliefs, that we're not going to say we agree to disagree and we're going to go our separate ways, we're going to escalate this to the level of a criminal prosecution, that speaks volumes about what the community's attitude is going to be towards Jane Doe at this point. Let me ask you a few questions. So, when I read your papers, I thought the whole concern about anonymity was that if her name is disclosed publicly, that there was concern over the potential harm to her child, even though her child is listed as a Doe plaintiff. Correct? Yes. And that there would be harassment of the child and potential bullying of the child and whatnot in school. And I thought that was a concern. All this business about, you know, prosecution and whatnot, I don't find that at all. I don't think that that would overcome the district court's exercise of discretion here. But the concern is with the third party child. Yes, that's very much current. Right. Now, is that what your argument rests on or what? It's an additional and co-equal argument, Your Honor. The child, if his identity is exposed to the broader community, is potentially going to be carrying negative reactions from this case for the rest of his life. Additionally, he's still going to be- that will lead to, you know, discovery that her child is the plaintiff, is also a plaintiff. How does that all- what is it? A small community? Schools? I mean, is she well-known as being in? Somebody who's not- who's trying to avoid vaccinating her child or what? So she's not well-known in the community. But again, in our modern age, I can go on Google and I can locate virtually anybody and connect virtually anybody to anybody. If Jane Doe's name becomes available, a simple Google search is going to bring up her- there's a high potential that a Google search- Does she have the same name as her child? Yes, Your Honor. So, let me- the child is protected by the federal rules. I mean, the child's name is a Doe, is listed as Doe. Why isn't that sufficient? Because if you can link mom to child, then that's an issue that's going to follow the child for the rest of his life. It's a stigma that is going to attach to him, and that attitudes aren't necessarily tolerant of his and his mother's beliefs. Additionally, at this point, he's out of school. He needs to be able to pursue an education. He and his mother need to lean on communal support for- How old is he today? I believe he is 15. Okay. So, we'd ask you to find the- and we would note that across the country, courts have granted anonymity in these cases. This is not speculative harm. This is something that has been dealt with, and the intersection with the abortion issue puts an additional element of hostility in that because that's still an issue that is very much being debated in our society. And all in all, the district court should have granted immunity. And then the last point I will make is the district court- I'm not- Well, hypothetically, if you lose on the other case and we say we don't have jurisdiction and we dismiss it, what's left? This case, it's a separate appeal. Okay. There's still a state action down at the district court. I have to go back to the drawing board and figure out what to do with that. But there is- there's still the issue of if I intend to attempt to do something with the district- Is that going to be affected by the other cases that we argued earlier? Well, I would- my hope is if you grant favorable relief to the appellees and appellants in those cases, I will be able to ask Judge Berardi to let our case proceed and for us to have a seat at the table in developing that strict scrutiny record that you were asking about earlier. So this is certainly an opportunity for very much more litigation to play out in this case. I just have one last question for you. Sure. In your pursuit of anonymity for the plaintiff, the plaintiff mom, you're not seeking to keep her name from the defendants, are you? No, and that was going to be my final point, is in two separate places in our trial court briefing, we explicitly said we are not looking to keep the names from the- From the defendants. They would need her name. Correct. And we have no argument with that.  Just publicly correct. And I would note that the- I'm not sure that that point came across to the district court. I believe the district court found that we were not willing to give it up, and I'm very sure that we were clear we're not looking to hold it away. All right. Well, you're in overtime now. I apologize, Sharon. Okay. Thank you. So unless there's additional questions, we'll hear from Ms. Young. Your Honors, may it please the court, Jacqueline Young on behalf of Appellee Dr. Erica Pond. The law requires Jane Doe to establish that her anonymity is justified and necessary. That showing has not been made here. This court should affirm the district court's ruling because the district court did not abuse its discretion. It applied the correct legal standard. Its factual findings were supported by the record, and it reasonably balanced Jane Doe's desire for anonymity with the stakes and circumstances in this litigation. So what are the findings and whether we agree with Judge Barad or not? What did he say? Did he actually cite anything, or did he cite things that are appropriate? Yes, Your Honor. It's apparent in the text of the order that the district court here conducted the five-factor analysis in this court's precedent of ex-textile corporation. The district court went through each factor, and it found that though he accepts Jane Doe does have fears of harm, those fears are not severe, and they're also not objectively reasonable. Judge Barad also agreed that Jane Doe is arguably vulnerable to retaliation, but as Judge Callahan, you noted and asked about with my friend on the other side, there have been other cases challenging this exact same school vaccine statute. We heard from two of those today. There's dosher that will be heard on June 22nd. Between this round of cases, there have been nine other parent plaintiffs who are proceeding under their real names, and there's been no suggestion of harm harassment for these individuals. So let me ask you this. I think this was in their briefs. I thought the concern here was about if the mom's name is made public, it won't take much to figure out who the kid is, even though he's listed as a Doe. Is that right? Is that what the argument is? Was there that argument? Isn't that in the record? What's wrong? Why isn't that? Did Judge Barad, you know, did he note that, and can you tell whether that was? He said, oh, that's just speculation. Well, Your Honor, it goes back to whether the fear of harassment and the fear of harm is severe and objectively reasonable, and this goes back to the fact that not only do we have these nine other parent plaintiffs who arguably the identity of their children could be found just as easily as the child in this case. Well, maybe she's a little bit more concerned about, you know, the name of her child getting out there. Yes, Your Honor, and just one point. Maybe the child is a little more vulnerable. Maybe, you know, something that handles that would not be able to handle any harassment. Isn't he disabled in this case, the child? No, Your Honor, that is not in the record. And that argument, Judge Paez, first, has not been submitted by appellant. So we would argue that there's first the issue of forfeiture. Judge Bumate, in terms of disability, that has not been. How would that be forfeiture? I mean, they made the argument. That is, they argued that the district court abused its discretion. They argued that the district court didn't adequately consider harm. And I'm only saying, you know, here it strikes me as a bit odd that on the one hand, the child is listed as a Doe plaintiff. On the other hand, the mom, if the mom is not listed as a Doe, I don't know. I mean, does it take much in a community to figure out that mom, last name, Doe, mom is the mom of Doe? Does that take much? Two points there, Your Honor. As a technical clarification, the child here is not a plaintiff. The only child plaintiff in these rounds of cases is Sharmina Grimsby's daughter. I thought she was suing on behalf of her child. She is suing on behalf of her child, yes, Your Honor. Furthermore, Your Honor, there's no suggestion in the record or appellant's motion that her child is uniquely vulnerable compared to the other, and I would say 59 parent plaintiffs that have challenged the school vaccine statute. That would be nine with this round of litigation and 50 other parent plaintiffs and their families during the first round of litigation in 2016 when SB-277 was first enacted. That would be Whitlow, Tory Love, Love, Middleton, and Brown. Then they all sued on their own behalf and on behalf of their child. Yes, Your Honor, and the same policy— Let me ask you this. Judge Bumate had a question, and I sort of jumped in. Just two questions. I think he was disabled in this case, right, that he has disabilities, that struggles with social development. Isn't that in the record? Yes, Your Honor. In the motion, appellant does state that she fears if her identity is known, then the public may get details about her son's medical condition such as— That makes him more vulnerable than the usual child, maybe. Your Honor, that would presume that whatever those medical conditions are, that they are material and relevant to the litigation, and they are not. Second, Your Honor— No, I thought it's inquiry of whether or not he's vulnerable and that it would lead to harassment of him or abuse of him. That argument has not been put forth by appellant here. The concern is whether or not that child's privacy would be exposed. Well, okay, but if the mother's trying to get an exception for her child, then—and a medical exception for not getting vaccinated, right? No, Your Honor. What's she trying to get for her child? A religious exemption. Okay, but—so would the child's medical condition have any relevance to that? No, Your Honor. At no point in the record does Jane Doe state that she has sought out a medical exemption for her child, and there's no suggestion that the child's medical condition is at all relevant to this free exercise claim. Additionally, Your Honor, if we were to equate— Go ahead. Yeah, I think the point is that because he's got these disabilities and social development problems, that being publicly exposed would be exacerbated for him. He's not like the typical kid that could handle some of this stress, right? What's wrong with that argument? Yes, Your Honor, and the question there is has that argument been put forth by appellant? Moreover, Your Honor, in terms of vulnerability— I didn't make it up that he was—I mean, someone said it, so— And then my second question, what is the prejudice? Everyone knows except for maybe one defendant who the plaintiff is, correct? Your Honor, to this day, the Department of Public Health still doesn't know. I believe it is— But they say that they will disclose to them, correct? So if that were the case, what would be the prejudice to the parties, to the defendants? Granted, Your Honor, it is true that if appellant were to disclose Jane Doe's identity to the defendants, this would address the fourth element in the advanced textile test. However, that factor is not dispositive. And if that argument were to carry weight, then theoretically every single case a plaintiff could proceed against— Let me ask you, in some of these cases, have the district courts granted anonymity to the plaintiff's parents? Yes, Your Honor. We can look to the example of Doe's 1 and 2 v. Hortrell, a New York Eastern District Court case. Doe v. Board of Regents, University of Colorado, Colorado case. Both those cases, the court stated that it was a close call, and ultimately they did grant anonymity. How about here in California? Any of our district courts granted anonymity in any of these cases? We actually can look at Doe v. San Diego Unified School District, which was discussed in detail earlier today. There the plaintiff saw anonymity. The school district did not oppose. The district court did note in its ruling before it went up on appeal that it felt the five factors were not met. However, for the purposes of moving up on this appeal, for this limited time, the district court would grant anonymity. But, Your Honor, all of what these cases illustrate is this court's holding in Kamehameha, which appellants, in answering Judge Callahan's question, is their strongest and best authority here. It's that district courts are granted broad discretion when it comes to these motions. An appellant has not established that there's been an abuse of discretion, that there was a clearly erroneous finding here. I have one last question for you, and that is do you think that in making those discretionary determinations that the district courts ought to look at and think about any potential harm to third parties like this child? Yes, Your Honor. The court can look at that with respect to how the appellants posit their claims on elements one, two, and three, the severity of the feared harms, the reasonableness of those harms, the vulnerability to retaliation. The court can certainly look at that, but the onus is on the plaintiff. The burden is on the plaintiff to submit affirmative evidence to suggest that. Here, that showing has not been made by appellants. This is why the district court's ruling should be affirmed, because it did not abuse its discretion. Okay. Thank you, Your Honors. So, what was the time situation here? No time. We don't have any additional questions. All right. Thank you both for your argument. This matter will stand submitted, and the court is in recess for the week.
judges: PAEZ, CALLAHAN, BUMATAY